IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| C.M.,[1]<br><br>    Plaintiff,<br><br> vs.<br><br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | Case No. 3:24-cv-00138-RRB<br><br>**ORDER REMANDING FOR**<br>**PAYMENT OF BENEFITS**<br>**(Docket 14)** |

## I. INTRODUCTION

Claimant, C.M., filed an application for Social Security Disability Insurance benefits on February 3, 2021, alleging disability since July 13, 2020, due to a post-traumatic stress disorder ("PTSD"), traumatic brain injury, multiple ruptured spinal discs, ulnar fracture with rebuilding and complications, left hip rebuild, and sacroiliac joint dysfunction.[2] The Agency initially denied Plaintiff's claims on August 21, 2021, and upon reconsideration on May 17, 2022.[3] Administrative Law Judge ("ALJ") Cecilia LaCara

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-1-suggestion_cacm_0.pdf.

[2] Docket 14 at 1 (citing Tr. 395–98, 476).

[3] Tr. 216 & 221.

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 1
Case 3:24-cv-00138-RRB  Document 20  Filed 05/19/25  Page 1 of 18

held a hearing on September 6, 2023,[4] and issued an unfavorable decision dated December 8, 2023.[5] The Appeals Council remanded matter on April 5, 2023, finding that the ALJ failed to evaluate opinion evidence of Dr. Cheryl Mallory and Dr. Bruck Clift.[6] Following a second hearing held August 1, 2023,[7] ALJ LaCara issued a new unfavorable decision dated November 4, 2023.[8]

Claimant has exhausted his administrative remedies and now seeks relief from this Court. He argues that the determination by the Social Security Administration ("SSA") that he is not disabled, within the meaning of the Social Security Act ("the Act"),[9] is not supported by substantial evidence. Claimant seeks a reversal of the decision by the SSA and a remand for further proceedings.[10] This matter has been fully briefed.

For the reasons set forth below, Claimant's Motion for Remand at **Docket 14** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for payment of benefits.

## II. STANDARD OF REVIEW

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any *medically determinable* physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[11]

---

[4] Tr. 63–105.
[5] Tr. 186–208.
[6] Tr. 211–12.
[7] Tr. 106–35.
[8] Tr. 26–49.
[9] 42 U.S.C. § 423; 42 U.S.C. § 1381.
[10] Docket 14.
[11] 42 U.S.C. § 423(d)(1)(A) (emphasis added).

*C.M. v. Comm'r of Social Security*　　　　　　　　　　　　　　　　　　　Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits　　　　　　　　　　　　　　　　　　　　　　　　Page 2
Case 3:24-cv-00138-RRB    Document 20    Filed 05/19/25    Page 2 of 18

The SSA defines a "medically determinable" impairment as an impairment that results "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[12] The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[13]

The Commissioner has established a five-step process for determining disability within the meaning of the Act,[14] relevant portions of which are addressed below. A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[15] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[16] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2."[17]

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[18] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[12] 20 C.F.R. § 404.1521.
[13] 42 U.S.C. § 423(a).
[14] 20 C.F.R. § 404.1520(a)(4).
[15] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[16] *Treichler*, 775 F.3d at 1096 n.1.
[17] *Tackett*, 180 F.3d. at 1099.
[18] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

conclusion."[19] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[20] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[21] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[22] Courts "review only the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely."[23] If an ALJ commits legal error, courts will uphold the decision if it is harmless.[24] An error is harmless if it is "inconsequential to the ultimate nondisability determination."[25]

## III. DISCUSSION

Claimant alleges that he is incapable of even sedentary work.[26] His date last insured is December 31, 2026.[27]

### A. ALJ Decision

At the first hearing, the ALJ took testimony from Claimant and a Vocational Expert ("VE"), Jaye Stutz.[28] At the second hearing, the ALJ took testimony from Claimant and VE Mark Harrington.[29]

---

[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[20] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[21] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[22] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).
[23] *Garrison*, 759 F.3d 995, 1010 (9th Cir. 2014).
[24] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[25] *Id.* (citation omitted).
[26] Docket 14.
[27] Tr. 27.
[28] Tr. 63–105.
[29] Tr. 106–35.

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 4
Case 3:24-cv-00138-RRB   Document 20   Filed 05/19/25   Page 4 of 18

Applying the 5-step process, the ALJ concluded in her second decision as follows: **Step 1**, Claimant had not engaged in substantial gainful activity since July 13, 2020, his alleged onset date; **Step 2**, Claimant suffered from severe impairments, including left hip condition, left sacroiliac joint dysfunction, thoracic and lumbar degenerative disk disease, and Ehler-Danlos/Joint Hypermobility Syndrome; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[30] The ALJ found that, despite a VA rating that included a diagnosis of traumatic brain injury, "traumatic brain injury (TBI) is not a medically determinable impairment."[31] The ALJ also dismissed assorted complaints about Claimant's hands, arms, shoulders, and feet as non-severe.[32] The ALJ further found that Claimant's "alleged mental symptoms and limitations from PTSD, traumatic brain injury, and depression . . . do not constitute severe impairments."[33]

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical limitations.[34] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony and other statements regarding the limitations imposed by his impairments.[35] This RFC assessment

---

[30] Tr. 29.
[31] Tr. 30 (citing Tr. 387).
[32] Tr. 30–31.
[33] Tr. 31.
[34] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[35] 20 C.F.R. § 404.1545(a)(3).

is used at both Step Four and Step Five.[36] In evaluating his RFC, the ALJ concluded that Claimant had the capacity to perform sedentary work.[37]

At **Step 4**, the ALJ found that Claimant could not perform his past relevant work as a commercial truck driver or highway patrol officer.[38] At **Step 5** the burden of proof shifts to the Commissioner.[39] With the assistance of a VE, the ALJ concluded that Claimant was able to perform other work in the national economy, such as "escort vehicle driver," "document preparer," or "paramutual (sic) ticket checker."[40]

B.   **Evaluation of Medical Opinions**

When evaluating medical opinions for claims filed on or after March 27, 2017, the SSA no longer gives any specific evidentiary weight to medical opinions or acknowledges a hierarchy of medical sources. Rather, the agency considers medical opinions in light of five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[41] Supportability[42] and consistency[43] are the two most important factors considered when determining the persuasive nature of a medical source's

---

[36] 20 C.F.R. §§ 404.1520(a)(4).
[37] Tr. 38.
[38] Tr. 47.
[39] *Treichler*, 775 F.3d at 1096 n.1.
[40] Tr. 48.
[41] 20 C.F.R. § 404.1520c(a) and (c).
[42] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).
[43] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and non medical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 6
Case 3:24-cv-00138-RRB   Document 20   Filed 05/19/25   Page 6 of 18

opinion, and the agency is specifically required by Regulation to explain how it considers these two factors.[44]

Claimant argues that the ALJ's evaluation of the medical opinion evidence failed to properly evaluate the supportability and consistency factors, and therefore the decision is not supported by substantial evidence.[45] Specifically, he complains that the ALJ failed to properly address the supportability and consistency of the opinions provided by Dr. Lyndal Stouten and Dr. Bruck Clift.[46]

Dr. Stouten wrote a letter to Idaho Disability Determination Services on February 18, 2021.[47] Therein, he summarized the medical reasons behind his opinion that Claimant was disabled. He noted that Claimant was "an Army Veteran who suffered from toxic brain injury while in the service."[48] He suffers from "a chronic thoracic radiculopathy with disc extrusion," and "low back pain and chronic lumbar radiculopathy." Dr. Stouten noted that Claimant had undergone several procedures and tried multiple medications; that there are no surgery options for his thoracic radiculopathy; and that medications provide some, but not reliable, relief. Additionally, the medications aggravate his traumatic brain injury and cause cognitive impairment. By way of example, Dr. Stoutin noted that, while

---

[44] 20 C.F.R. § 404.1520c(b).
[45] Docket 14 at 6.
[46] Docket 14 at 8–15.
[47] Tr. 1526.
[48] The Court suspects the word "toxic" is a typographical error, and the physician meant "traumatic."

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 7
Case 3:24-cv-00138-RRB   Document 20   Filed 05/19/25   Page 7 of 18

on medication, Claimant "makes mistakes such as stopping at green lights, running an occasional red light or finding himself lost."[49]

The ALJ found Dr. Stoutin's opinion unpersuasive, stating that the assessment "is inconsistent with the overall record that . . . does not reflect notable medication side effect[s] and does not reflect mental status finding[s] indicative of dizziness, drowsiness, and poor concentration due to medication side effects."[50] The Commissioner relies upon instances where Claimant "failed to report any cognitive side effects from his medication."[51] The Commissioner argues that the contradiction between Dr. Stoutin's conclusions and Claimant's failure to report symptoms "formed a rational basis for finding Dr. Stoutin's opinion less persuasive."[52]

The ALJ also was unpersuaded by the RFC established by Dr. Clift, who opined that Claimant's impairments were "severe enough to constantly interfere with the attention and concentration necessary to perform even simple tasks, and he was incapable of even low stress work."[53] Dr. Clift assessed Claimant's capacity to sit/stand/walk for less than 2 hours in an 8-hour workday; that he required a sit/stand option and at least 5 minutes per hour of walking around; unscheduled 15-minute breaks; no lifting; no turning head left or right, and rarely look down; and that his impairments would cause more than four absences per month.[54] But the ALJ found Dr. Clift's opinion lacked "objective

---

[49] *Id.*
[50] Tr. 45.
[51] Docket 15 at 3.
[52] *Id.*
[53] Tr. 46–47; Tr. 2794–98; Docket 14 at 12.
[54] Tr. 2796-98.

findings or other sufficient rationale to support the extreme limitations he asserts," and he also found it "inconsistent with the longitudinal record."[55] Claimant suggests that in reaching this conclusion, the ALJ reviewed only the RFC Questionnaire, and did not consider the findings and opinions in Dr. Clift's extensive treatment notes.[56]

Claimant complains that the Commissioner engages in *post hoc* rationalization of the ALJ's decision.[57] He argues that the ALJ did not adequately address Dr. Stoutin's opinion that Claimant's pain medications caused significant side effects that impact employment, and instead "mischaracterized the record . . . by cherry-picking evidence that supports this unfounded conclusion that [Claimant] suffered no deficiencies in concentration as a side effect of medication."[58] Claimant cites examples of two other physicians finding adverse effects including dizziness, drowsiness, and decreased concentration.[59] Additionally, Claimant himself testified to side effects of oxycodone and Gabapentin including impaired concentration, focus, and short-term memory.[60]

The Court has reviewed the records relied upon by the Commissioner to support the argument that Claimant "routinely failed to report any cognitive side effects from his medication." All of those records were from visits with Dr. Stephen Markewich

---

[55] Tr. 46–47.
[56] Docket 14 at 13.
[57] Docket 18 at 2 (citing Docket 15 at 4).
[58] Docket 14 at 10.
[59] *See* Tr. 1316 (primary care provider noted in February 2021 that "the combination of his current pain medications has the potential to cause dizziness, lack of concentration, decreased motor responses, and significant drowsiness."); 1788–92 (summary of diagnoses and medications); and 2795 (Physical Residual Functional Capacity Questionnaire completed by Dr. Clift).
[60] Tr. 116.

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 9
Case 3:24-cv-00138-RRB    Document 20    Filed 05/19/25    Page 9 of 18

or his physician's assistant at Algone Interventional Pain Clinic between April 2022 and July 2023.[61] While these records do not document any significant side effects, they do reflect significant thoracic and lumbar pain ranging from 7 to 9 on a ten-point scale, lending credence to the significant need for pain medication.

Dr. Stoutin also noted that "prolonged sitting, standing and lifting significantly exacerbate [Claimant's] pain."[62] The ALJ found this statement "conclusory and unsupported," complaining that the physician did not specify the meanings of "prolonged" and "significantly."[63] But physicians need not define common words in their opinions. Moreover, "prolonged" is a term commonly used in the Social Security context, of which Dr. Stoutin presumably was aware. Social Security Ruling 83–12 expressly states that a person who is unable to sit for "prolonged" periods of time is incapable of engaging in the full range of sedentary work. "[T]o be physically able to work the *full range* of sedentary jobs, the worker must be able to sit through most or all of an eight hour day."[64]

Claimant argues that the ALJ's failure to properly evaluate the opinions of Drs. Clift and Stoutin were not harmless, as they impacted the ultimate RFC and the hypotheticals presented to the VE. The Court agrees. Despite the ALJ's findings that neither Dr. Clift's nor Dr. Stoutin's opinions were consistent with other opinions in the record, they were consistent with *each other*. Additionally, both opinions were consistent

---

[61] Tr. 2069, 2073, 2087, 2992, 3000, 3020, 3036, 3050–51, and 3076.
[62] Tr. 1526.
[63] Tr. 45.
[64] *Tackett,* 180 F.3d at 1103 (emphasis added).

*C.M. v. Comm'r of Social Security*           Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits           Page 10

Case 3:24-cv-00138-RRB     Document 20     Filed 05/19/25     Page 10 of 18

with the opinion of examining physical therapist, James Silwa, DPT, who performed a functional capacity evaluation and issued a 23-page report in 2021.[65] Mr. Silwa determined that Claimant was capable of "less than sedentary" work, finding that he was unable to combine lift and carry any weight, that he was capable of sitting for a maximum of 2.5 hours per day, and that his ability to stand or walk was limited to 50 minutes or less per workday.[66] Notably, Mr. Silwa also indicated that Claimant "gave a consistent performance and effort during his functional capacity evaluation. The results of this evaluation are a valid representation of his current functional abilities. The AMA Observable Pain Behaviors was used to further determine consistency/validity" of Claimant's efforts.[67]

For the reasons discussed above, the ALJ failed to properly address the supportability and consistency of the opinions provided by Dr. Stouten and Dr. Clift, and therefore the decision is not supported by substantial evidence.

C.  **Traumatic Brain Injury**

The ALJ found that despite a VA rating decision based primarily on traumatic brain injury, "traumatic brain injury (TBI) is not a medically determinable impairment."[68] The SSA defines a "medically determinable" impairment as an impairment

---

[65] Tr. 1725–48.
[66] Tr. 1725.
[67] *Id*.
[68] Tr. 30 (citing Tr. 387).

*C.M. v. Comm'r of Social Security*  Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits  Page 11
Case 3:24-cv-00138-RRB   Document 20   Filed 05/19/25   Page 11 of 18

that results "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[69]

Traumatic Brain Injury is addressed in listing 11.18 in the SSA Listing of Impairments (Adult Listings), and is characterized by A or B as follows:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury.
>
> OR
>
> B. Marked limitation in physical functioning, and in one of the following areas of mental functioning, persisting for at least 3 consecutive months after the injury:
>
> 1. Understanding, remembering, or applying information; or
>
> 2. Interacting with others; or
>
> 3. Concentrating, persisting, or maintaining pace; or
>
> 4. Adapting or managing oneself.[70]

The ALJ provided no analysis considering this listed impairment, or whether Claimant had exhibited the relevant symptoms for three months after the original injury.[71] While it is

---

[69] 20 C.F.R. § 404.1521.
[70] https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#11_18.
[71] It is common knowledge that traumatic brain injury can have lasting effects manifesting in physical or cognitive issues. *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC4677116/.

*C.M. v. Comm'r of Social Security*　　　　　　　　　　　　　　　　Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits　　　　　　　　　　　　　　　　Page 12
Case 3:24-cv-00138-RRB　　　Document 20　　　Filed 05/19/25　　　Page 12 of 18

unclear when the injury originally occurred, the earliest mention in the record is dated December 4, 2017, indicating diagnosis on or around November 20, 2014.[72]

The ALJ found that the record did not show *ongoing treatment* for TBI. But TBI is a unique listing, as it only requires a finding of relevant symptoms for "at least 3 consecutive months after the injury." The medical records go back no further than 2017. Nevertheless, Claimant's TBI is consistently noted as a condition known to the VA throughout the medical records, in addition to PTSD, anxiety, and depression.[73] Seventy percent of Claimant's 100% VA disability rating was attributed to TBI.[74] The ALJ's cursory dismissal of TBI as "not medically determinable" was error.

### D. Significant Numbers of Jobs

The Court independently notes additional errors by the ALJ with respect to her Step 5 findings regarding performing other work in the national economy.

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in ***significant numbers either in the region where such individual lives or in several regions of the country***.[75]

---

[72] Tr. 2156.
[73] Exhibit 10/F.
[74] Tr. 387.
[75] 42 U.S.C.A. § 423(d)(2)(a) (emphasis added).

The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner.[76] The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," and has not established a minimum requirement.[77] Anecdotally, however, the Ninth Circuit has found 2,500 jobs in California to constitute a "significant number of jobs in the region," while 25,000 jobs nationally was significant, but characterized as a "close call."[78]

### 1. The ALJ erred in finding Claimant could work as an "escort vehicle driver"

Despite Claimant's testimony that he experiences side-effects from prescribed opiates, including fatigue and decreased focus/concentration,[79] his testimony that he rarely drives due to these side effects,[80] and his doctor's recommendation that he "be cautious driving," due to the pain meds,[81] the ALJ omitted from the hypotheticals any limitations as to Claimant's ability to drive.[82] Accordingly, the VE testified that "escort vehicle driver" met the criteria presented in the ALJ's hypothetical.[83] An "Escort-Vehicle Driver" (DOT code: 919.663-022) "[d]rives vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares: Precedes escort and

---

[76] *Tackett v. Apfel,* 180 F.3d at 1099.
[77] *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 1986).
[78] *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 & 529 (9th Cir. 2014).
[79] Tr. 116.
[80] Tr. 74.
[81] Tr. 2049.
[82] Claimant also reported to his physician in February 2021 that his workers comp release had failed to include limitations with respect to driving due to Hydrocodone and Lyrica, stating in an email that he was "way too impaired from my medications to do any commercial driving." Tr. 1314.
[83] Tr. 132.

maintains specified distance between pilot vehicle and escort to provide warning to other motorists and to clear traffic at locations. Communicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion."

The Court finds that the ALJ's determination that Claimant could work as a driver of any kind is not supported by substantial evidence, given Claimant's consistent use of prescribed opiates. Moreover, common sense alone dictates that reliance on a job that involves driving is ill-advised in these circumstances.

### 2. The ALJ erred in finding Claimant could work as a "parimutual-ticket checker"

A "Parimutuel-Ticket Checker" (DOT code: 219.587-010) "[c]ounts and records number of parimutuel tickets cashed at race track to verify records of cashiers. Compares totals with entries on daily balance sheet. Compares each ticket with sample or examines tickets under fluorescent light to verify validity of tickets. Reports discrepancies." In short, a parimutuel-ticket checker is responsible for verifying the accuracy and validity of betting tickets at horse and dog racing tracks. Not only does Alaska lack horse and dog racing tracks, but such gambling activities are illegal under state law.[84] Accordingly, there are zero "parimutuel-ticket checker" jobs in the state of Alaska, where Claimant lives. Moreover, 6,400 jobs nationwide falls far short of the 25,000

---

[84] *See* Alaska Stat § 11.66.200–280 (2024).

*C.M. v. Comm'r of Social Security*          Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits          Page 15
Case 3:24-cv-00138-RRB     Document 20     Filed 05/19/25     Page 15 of 18

number that the Ninth Circuit has deemed a "close call" with respect to finding a "significant number" of jobs in the national economy.[85]

### 3. The ALJ failed to identify a significant number of jobs

The VE identified three sedentary jobs that Claimant could perform: escort vehicle driver (37,000 jobs nationally), document preparer (15,600 jobs nationally) and parimutual ticket checker (6,400 jobs nationally). After removing the 37,000 jobs associated with driving, and 6,400 jobs as a ticket checker, for the reasons discussed above, and giving the Commissioner the benefit of the doubt that Claimant could perform work as a document preparer (which the Court does not determine), the Commissioner has established only 15,600 jobs in the national economy that Claimant could perform. In light of the Ninth Circuit's characterization of 25,000 jobs as a "close call," the Court finds that 15,600 jobs on the national level is not a "significant number."[86] Accordingly, the ALJ's finding that Claimant was capable of performing other "work which exists in significant numbers either in the region where such individual lives or in several regions of the country"[87] was not supported by substantial evidence.

## E. Instructions on Remand

The Commissioner's decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to

---

[85] *Gutierrez*, 740 F.3d at 529.
[86] Even the combination of document preparer and parimutuel ticket checker fails to meet the 25,000 threshold.
[87] 42 U.S.C.A. § 423(d)(2)(a) (emphasis added).

*C.M. v. Comm'r of Social Security*      Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits      Page 16
Case 3:24-cv-00138-RRB     Document 20     Filed 05/19/25     Page 16 of 18

support a conclusion. Having carefully reviewed the administrative record, including extensive medical records, the Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence for the reasons discussed in this Order.

> If the district court finds error in an ALJ's decision, the court may remand the case for additional evidence or remand for payment of benefits. *Trevizo v. Berryhill*, 870 F.3d 664, 682 (9th Cir. 2017). In determining whether the case should be remanded for further proceedings, the court should assess whether those proceedings would be useful and whether outstanding issues are unresolved. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1099, 1105 (9th Cir. 2014). Further proceedings are useful when conflicts or ambiguities in the record must be resolved. *Id.* at 1101.[88]

With respect to whether this Court should remand for further administrative proceedings or remand for benefits, the Court considers the "credit-as-true" rule dictated by the Ninth Circuit.[89] The Court considers whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.[90] Having so found, the next question is whether the record has been fully developed.[91] Further administrative proceedings generally are useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[92]

The Court has reviewed the administrative record and finds that it is adequately developed. It is undisputed that Claimant is capable of, at most, *less than* a full range of sedentary work. SSR 96-9p states that "[i]f the performance of past relevant work

---

[88] *S.C. v. Saul*, No. 19-CV-04349-NC, 2020 WL 2094106, at *1 (N.D. Cal. May 1, 2020).
[89] *See Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396 (9th Cir. 1988).
[90] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–02 (9th Cir. 2014).
[91] *Treichler*, 775 F.3d at 1101.
[92] *Id.* (citations omitted).

*C.M. v. Comm'r of Social Security*　　　　　　　　　　　　　　　　　　Case No. 3:24-cv-00138-RRB
Order Remanding for Payment of Benefits　　　　　　　　　　　　　　　　　　　　　　Page 17
Case 3:24-cv-00138-RRB    Document 20    Filed 05/19/25    Page 17 of 18

is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." The ALJ has had two opportunities to give this matter consideration, and to identify other work existing in significant numbers in the national economy that Claimant could perform. She has failed to do so. The Court finds that a third attempt by the ALJ is unnecessary, and not in the interests of justice.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 14** is **GRANTED** and this matter is **REMANDED** for payment of benefits.

IT IS SO ORDERED this 19th day of May, 2025, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge